UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:04-CR-79 |
| V. ) | District Judge Greer |
| ) | Magistrate Judge Inman |
| JAIME VARGAS QUINTANILLA ) | |

REPORT AND RECOMMENDATION

This defendant has filed a Motion to Suppress Evidence – specifically, five kilograms of cocaine – seized from his vehicle on October 20, 2004, by Officer Rabun of the Johnson City Police Department. [Doc. 67]. This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on April 26, 2005.

The sole issue is whether defendant knowledgeably and voluntarily consented to the search of his car after it had been stopped by Officer Sollie Rabun of the Johnson City Police Department.

Defendant does not raise any issue about the validity of the stop itself. At the suppression hearing, Officer Rabun was asked very little concerning his reasons for effecting the stop in the first place. However, there was relatively extensive testimony provided in this regard in defendant's previous preliminary hearing, and a transcript of that hearing was filed as an exhibit to this suppression hearing, for background information if nothing else. A brief recitation of those facts, however, is necessary.

On August 28, 2004, Officer Rabun stopped a vehicle for an improper display of registration; the driver was Mr. Vellejo (or Villareal), a co-defendant in this case. During the course of that traffic stop, Officer Rabun discovered that Mr. Vellejo was in possession of a small amount of marijuana and drug paraphernalia, and Vellejo was arrested. Later that day, after Vallejo's release, the Johnson City Police Department learned that Vellejo's finger prints belonged to a Rigoberto Ortiz. In other words, Vellejo had provided false identification to the Johnson City Police Department.

On October 19, Officer Rabun observed Vellejo driving a silver or gray Nissan Altima. Intending to arrest Mr. Vellejo for criminal impersonation, Rabun tried to catch up with the Altima but was unable to do so.

The following day, October 20, Rabun was in the same area looking for the Nissan vehicle. He ultimately saw the vehicle which contained three people, and he noted that Mr. Vellejo was a passenger in the front seat. Rabun effected a stop of the Nissan vehicle on Bell Ridge Road; it was driven by Jaime Vargas, the defendant herein.

All three occupants of the car, including the driver and defendant herein, are Hispanic. Inasmuch as the government insists that the defendant consented to a search of his car, it is appropriate at this juncture to address the issue of *language*. Defendant has requested an interpreter at all stages of this proceeding, including this suppression hearing. Thus, one might assume that defendant speaks little or no English, and that

2

would be an utterly erroneous assumption; it is abundantly clear that defendant understands English reasonably well. Indeed, from the context of the hearing, it appears that not even defendant himself argues that he does not understand and speak English, at least to some extent. First of all, Officer Rabun testified at length regarding his conversations with the defendant at the scene of the traffic stop. Those conversations were totally in English and, according to Officer Rabun, defendant responded (in English) appropriately to each question asked of him, and even asked questions of Officer Rabun, which questions Officer Rabun answered in English. Moreover, during the course of the suppression hearing, defendant was assisted by an in-court interpreter, Mr. Ramon Cordero. The defendant testified in his own behalf. Mr. Cordero stood at defendant's side and undertook to translate into Spanish the questions posed by defendant's attorney and, after defendant answered in Spanish, Mr. Cordero translated defendant's answer into English for the benefit of the Court and the lawyers. In one instance, Mr. Cordero translated defendant's answer to his attorney's question, at the conclusion of which defendant turned around to Mr. Cordero and *corrected Mr. Cordero's English translation*. In another instance, at the conclusion of a question by his attorney, defendant shook his head from side to side in response to the question before Mr. Cordero had translated the question into Spanish. A few minutes later, defendant began answering (in Spanish) a question asked by his attorney before Mr. Cordero had translated that question into Spanish. During cross-examination by

Assistant United States Attorney Reeves, the following question was asked of defendant: "You had no problem understanding the officer?" After that question had been translated into Spanish by Mr. Cordero, the defendant answered "no." Apparently feeling that the answer of "no" was ambiguous, Assistant United States Attorney Reeves then asked, "that is *not* correct?" Before Mr. Cordero could translate the question into Spanish, defendant interjected, "no, correct."

Additionally, defendant himself testified in great detail regarding the conversation he had with Officer Rabun after the traffic stop, and for the most part his version matches closely that of Officer Rabun's. As already mentioned earlier, it does not appear that defendant is arguing that he did not understand Officer Rabun. Nevertheless, to lay this issue to rest, it is abundantly clear that defendant and Officer Rabun completely understood one another in all particulars on October 20, 2004.[1]

After Officer Rabun compelled the Nissan to pull over, he approached the driver (defendant) and asked to see his driver's license, vehicle registration, and proof of insurance. Defendant produced a valid driver's license and, since the car was an Enterprise rental car, the rental contract. Officer Rabun asked defendant what he was doing, to which defendant responded that he and his two passengers had just been to the store and they were returning to their home on Bell Ridge Road in Johnson City.

---

[1] It bears mentioning that defendant has an extensive education. He was a public accountant in Mexico and, here in the United States, was employed by Citigroup in its collection department; presumably, he was able to communicate with his English-speaking co-workers.

4

Officer Rabun then went around to the other side of the car to talk to the passenger, Mr. Vellejo. It was Mr. Vellejo of course who had provided false identification to the police a few months earlier. Mr. Vellejo presented a driver's license to Officer Rabun, and that license indicated that the prior names and identifications furnished to the Johnson City Police Department to this individual were false; at least, either the driver's license then presented to Officer Rabun was false, or the prior identifications were false. Certainly, all of them could not be true. Officer Rabun thereupon placed Mr. Vellejo under arrest for criminal impersonation.

Officer Rabun then returned his attention to defendant. At this point, defendant was standing outside the car. Officer Rabun asked defendant if he had any weapons in the car, to which defendant responded that he did not. Defendant then asked Officer Rabun why he had stopped him; if Officer Rabun responded to defendant's question, neither Officer Rabun nor defendant testified about the response. Because Vellejo earlier had been arrested for possession of marijuana and drug paraphernalia, Rabun suspected that the vehicle might contain narcotics. Officer Rabun and defendant walked toward the rear of the car, at which place Rabun asked defendant, "Is there something in the vehicle I need to know about?" Defendant responded, "No." According to Rabun, he then asked defendant, "Can I search your vehicle?" According to defendant, Rabun asked him, "Is there some problem if I look in your car?" This factual dispute is of no legal significance. Defendant testified that he then asked

5

Rabun, "Why [do you want to search my car]?", to which Officer Rabun only responded, "Does it matter to you, sir, if I search your car?" Rabun testified, *at the preliminary hearing*, that he may have asked, "Do you care if I look in your car?", whereas at the suppression hearing he testified unequivocally that he asked, "Can I search your car?"[2] Again, this dispute is of no legal significance since the evidence is clear that defendant completely understood that Officer Rabun was asking permission to search the car; there was no confusion or misunderstanding, either by virtue of language or ambiguity. It bears repeating: Defendant completely understood that Officer Rabun was asking permission to search the car. When Officer Rabun asked him if it "mattered" to him if Rabun searched the car, defendant testified that he responded "no."

Defendant's attorney asked him if he consented to the search, and defendant answered "no."[3] However, defendant's ability to communicate relatively easily with Officer Rabun, and the fact that he clearly understood what Officer Rabun was asking him, indicates conclusively that the consent he communicated to Officer Rabun was knowledgeable and voluntary. To phrase it in the terminology favored by the courts,

---

[2] Officer Rabun testified that, subsequent to the preliminary hearing, he reviewed his arrest report and confirmed precisely the question he put to defendant. Actually, there is very little discrepancy between Rabun's testimony at the preliminary hearing and the suppression hearing.

[3] This is one of the episodes where defendant answered the question before it had been translated by Mr. Cordero.

the "totality of the circumstances" clearly shows that defendant's consent was both knowledgeable and voluntary. *See, e.g., United States v. Mendenhall*, 446 U.S. 544 (1980).[4]

The government has carried its burden of proving that defendant's consent was valid.

It is respectfully recommended that defendant's motion to suppress be DENIED.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). The objecting party shall procure and file simultaneously with the objections a transcript of any testimony before the Magistrate Judge. If a transcript is not filed simultaneously with the objections, the party filing the objections shall either (1) file a declaration that the transcript was ordered before the objections were filed and the date on which the party expects the transcript to be filed, or (2) affirmatively state that a transcript of the testimony presented to the Magistrate Judge is not needed for resolution of the objections.] If a party files objections to this report and recommendation, the attorney for that party shall provide a copy of such objections to the opposing counsel on the same day the objections are filed, either by hand-delivery

---

[4]Two additional facts, although of less importance, nevertheless should be mentioned. First, a drug dog was on the scene but was not used since defendant already had consented to the search. Second, defendant subsequently consented, in writing, to a search of his residence.

or facsimile transmission. The opposing counsel shall file his/her response to the objections within five business days of the date the objections are filed.

        Respectfully submitted,

        <u>s/ Dennis H. Inman</u>
        United States Magistrate Judge